# United States Court of Appeals
### For the Eighth Circuit

_____

No. 25-2101

_____

Loralyn Maixner; Wayne Maixner; Ron Maixner; Alane Maixner,

*Plaintiffs - Appellees*,

v.

Harold Eidsness; Cody Johnson; Aaron Mork; Doug Flaagan; Michael Haugland; Cameron Swenson; Nathan Parks; Jayme Jo Tenneson; Steve Forde; Nelson County Park Board, The, a Political Subdivision of the State of North Dakota; Dennis Fahey,

*Defendants - Appellants*.

_____

Appeal from United States District Court
for the District of North Dakota - Eastern

_____

Submitted: March 19, 2026
Filed: July 15, 2026
[Published]

_____

Before COLLOTON, Chief Judge, GRUENDER and KOBES, Circuit Judges.

_____

PER CURIAM.

Four members of the Maixner family in North Dakota have leased campsites at the Stump Lake Park Campground for many years. In November 2024, the Nelson County Park Board voted not to renew the Maixners' lease contracts. The Maixners sued the Board under 42 U.S.C. § 1983, alleging that the non-renewal decision was retaliation for speech at a park board meeting. The Maixners sought monetary damages and injunctive relief. The district court concluded that the Maixners established a likelihood of success on their First Amendment claim and preliminarily enjoined the Board from evicting the Maixners from their campsites. We conclude that the Maixners have not shown likely irreparable harm arising from the Board's decision that would justify a preliminary injunction before the case is resolved on the merits. We therefore vacate the district court's order.

I.

The Maixners for many years have leased the same lots at Stump Lake Park under renewable one-year leases with the Nelson County Park Board, a political subdivision of the State of North Dakota. Two have leased for twenty-seven consecutive years; two have leased for eleven.

During a September 2024 park board meeting, the Maixners commented on alleged problems with the park facilities, the purported misuse of park funding, and the Board's failure to communicate with lessees. Alane Maixner stated that "[o]ur concern is spending money in the wrong place at the wrong time." Ron Maixner stated that the Board is "batting 100% in making bad decisions," including with respect to management, equipment buying, and operation of a restaurant. After the meeting concluded, but before recording devices were turned off, one of the board members referred to the Maixners as "our three problem makers." At the next meeting, the Board voted not to renew the Maixners' leases and notified them by

letter. The letters did not state a reason, but the Board later explained that the decision was based on conduct and behavior of the Maixners toward staff and other campers.

The Maixners filed an action against the Board under 42 U.S.C. § 1983, seeking $450,000 in damages and an injunction. The complaint alleged that the Board's non-renewal decision violated the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. After the Board filed an answer denying the claims, the Maixners moved for a temporary restraining order and a preliminary injunction. The district court granted a temporary restraining order and scheduled a hearing. At the hearing, Loralyn Maixner testified in part that the Maixners sought $450,000 to compensate the family for the damages they claim to have suffered.

The district court granted a preliminary injunction that prevented the Board from evicting the Maixners from their campsites. The district court concluded that the Maixners had "demonstrated a likelihood of success on the merits of their retaliation claim, and therefore a preliminary injunction is appropriate." Citing *Minnesota Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864, 870 (8th Cir. 2012), the court reasoned that because the Maixners established a likelihood of success on their First Amendment claim, the court could presume that other factors necessary for a preliminary injunction were satisfied.

The Board appeals the district court's order. We review the district court's conclusions of law *de novo*, findings of fact for clear error, and application of law to fact for abuse of discretion. *Cigna Corp. v. Bricker*, 103 F.4th 1336, 1342-43 (8th Cir. 2024).

-3-

II.

A plaintiff seeking a preliminary injunction must show, among other things, that he is likely to suffer irreparable harm. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 319 (8th Cir. 2009). Even where a permanent injunction may be appropriate relief after a final decision on the merits, preliminary injunctive relief is not necessarily warranted if any interim harm can be remedied in a final judgment. *Bandag, Inc. v. Jack's Tire & Oil, Inc.*, 190 F.3d 924, 926 (8th Cir. 1999) (per curiam). "Failure to show irreparable harm is an independently sufficient ground upon which to deny a preliminary injunction." *Watkins, Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003).

The district court determined that the Maixners demonstrated a likelihood of success on the merits of their retaliation claim. The court then concluded that "[s]ince this is a First Amendment issue, the other factors of a preliminary injunction are presumed to be met." We conclude that a separate inquiry into irreparable harm is required, and that the record is insufficient to support a determination of likely irreparable harm that would justify a preliminary injunction.

In *Elrod v. Burns*, 427 U.S. 347 (1976), a plurality of the Supreme Court reasoned that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Id*. at 373 (plurality opinion). A majority of the Court later endorsed that proposition. *Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 19 (2020) (per curiam). In *Elrod*, the Court explained the rationale:

> It is clear therefore that First Amendment interests were either threatened or in fact being impaired at the time relief was sought. The

-4-

loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury. Since such injury was both threatened and occurring at the time of respondents' motion and since respondents sufficiently demonstrated a probability of success on the merits, the Court of Appeals might properly have held that the District Court abused its discretion in denying preliminary injunctive relief.

427 U.S. at 373-74 (citations omitted). As this court has observed, *Elrod* ordered an injunction where it was "clear" that "First Amendment interests were either threatened or in fact being impaired *at the time relief was sought*." *Hotchkiss v. Cedar Rapids Cmty. Sch. Dist.*, 115 F.4th 889, 894 (8th Cir. 2024) (quoting *Elrod*, 427 U.S. at 373) (emphasis added in *Hotchkiss*).

Not every First Amendment claim, however, involves an immediate "loss of First Amendment freedoms." In *Rushia v. Town of Ashburnham*, 701 F.2d 7 (1st Cir. 1983) (Breyer, J.), for example, the court concluded that a plaintiff failed to establish irreparable harm because he "did not claim in the district court that his 'irreparable injury' consisted of the threat to his First Amendment right to display and sell certain magazines; rather, his sole claim was that the 'injury' consisted of the threatened state prosecution." *Id*. at 10. This court, too, has held that a plaintiff alleging a violation of the First Amendment must make a clear showing of likely irreparable harm to justify a preliminary injunction. *Kohls v. Ellison*, 166 F.4th 728, 732-33 (8th Cir. 2026); *Hotchkiss*, 115 F.4th at 894. The Supreme Court likewise has explained in a First Amendment case that "a preliminary injunction does not follow as a matter of course from a plaintiff's showing of a likelihood of success on the merits," and that "a court must also consider whether the movant has shown 'that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" *Benisek v. Lamone*, 585 U.S. 155, 158 (2018) (per curiam) (quoting *Winter*, 555 U.S. at 20).

In this case, the Maixners do not claim an immediate threat to their First Amendment right to speak at park board meetings; they seek damages for the non-renewal of their leases and appropriate injunctive relief regarding the leases. They also assert that non-renewal of their leases would abruptly terminate their "North Dakota Summer way-of-life." But however much the Maixners might enjoy their ability to use the resources of a public campground, the loss of a summer campsite lease does not satisfy the legal standard of irreparable harm. *See Sampson v. Murray*, 415 U.S. 61, 91-92 (1974); *Hynoski v. Columbia Cnty. Redevelopment Auth.*, 485 F. App'x 559, 563 (3d Cir. 2012) ("[W]e have held that the taking of real property can be adequately remedied by monetary compensation and that the intangible personal connection to property does not render condemnation an irreparable injury."); *Noel vs. Westlake Fin. Servs.*, No. 25-cv-2117, 2025 WL 3122870, at *2 (M.D. Fla. Nov. 7, 2025) ("Plaintiffs provide no authority supporting that an emotional attachment to or a possessory interest in a motor vehicle can cause the loss of that vehicle to constitute irreparable harm.").

The Maixners sought damages of $450,000 to compensate them for the harm allegedly suffered due to non-renewal of the leases. They have not established that monetary relief would be insufficient to remedy the alleged harm. They have therefore failed to make the necessary showing of irreparable harm that might justify the extraordinary relief of a preliminary injunction.

Given our decision on irreparable harm, we express no view on the district court's conclusion about the likelihood of success on the merits or on the apparent assumption of the parties that protected speech in this context would be limited to speech on matters of public concern. *Cf. L.L. Nelson Enters., Inc. v. Cnty. of St. Louis*, 673 F.3d 799, 808 (8th Cir. 2012) (discussing adverse action against "a public employee, an independent contractor, or another actor with whom the government has a comparable pre-existing commercial relationship").

The order of the district court is vacated, and the case is remanded for further proceedings.

_____